## In re JEFFERSON LEATHER GOODS CO., Inc.

### No. 20479.

District Court, E. D. New York.

Jan. 19, 1933.

Harry G. Fromberg, of New York City (Archibald Palmer, of New York City, of counsel), for respondents.

Nathaniel J. Palzer, of New York City (Michael S. Gleason, of New York City, of counsel), for trustee.

BYERS, District Judge.

Hearing on a petition to review an order of a referee in bankruptcy granting a turnover motion made by the trustee. The order is attacked on the ground that the persons against whom it was made took timely objection to the jurisdiction of the referee to adjudicate in a summary proceeding; and that he erred in deciding that a special notice of appearance and claim of adverse title by the petitioners was without merit and showed no colorable title on the part of the latter.

The facts involved are undisputed, namely:

On May 9, 1931, a voluntary petition in bankruptcy was filed by the above named corporation, all the capital stock of which ($7,-500.00) was owned by Harris Bloom, the president. The business of the company was the manufacture of women's pocket books and hand bags.

The business was conducted by Harris Bloom and his three sons, Michael, Samuel and Marcus, on 27th Street, in the borough of Manhattan, New York City. The office of the company is said to have been in the home of the son Michael at No. 7402 Twenty-First avenue, in the borough of Brooklyn, where the meager books of the corporation were said to have been kept from and after January 1, 1931, as a matter of convenience. Presumably this was regarded as the principal office of the company.

On the 6th or 7th of May, 1931, Harris Bloom decided to put his corporation into bankruptcy; two days before, the son Michael (who was salesman and general factotum) casually encountered on the street an acquaintance by the name of Herman Holtzman, who at that time was a salesman in the awning and screen business in White Plains; about a year before that he had been a solicitor for the Metropolitan Life Insurance Company.

Michael Bloom stated to Holtzman that the company had a considerable accumulation of such bags which Holtzman could buy for $175.00, and the latter then went to the factory, saw the merchandise in question, and paid the sum named in cash, using in part the proceeds of collections which he had made for his employer; having made the purchase, he walked downstairs to the street on the lookout for a carrier to transport the merchandise; he had no delivery agency in mind, and by chance encountered a truck driver on the street; at that moment of time it occurred to Mr. Holtzman to send the merchandise which he had so purchased to the home of Michael Bloom's mother-in-law; the idea came to him without previous suggestion, and he thereupon telephoned to her and procured her permission to cause the delivery to be made to the cellar of her home, and he thereupon returned to the factory; with the assistance of one or both of the sons of Harris Bloom, he carried the merchandise in two packing cases downstairs, put it on the truck, drove it to the place in question, saw Mrs. Hecker, Michael Bloom's mother-in-law, and, pursuant to the telephone arrangement, delivered the merchandise into her cellar.

Holtzman had never bought pocket books before, and he knew nothing of their value; after leaving them in the said cellar and during the course of the next few days, he went to several stores, offering to sell the pocket books, but he could not give the name of any store or the street on which it was located. He never counted the pocket books, and does not know how many he purchased.

His narrative is contradicted by Michael Bloom only as to an arrangement with Mrs. Hecker to receive the merchandise, which Michael Bloom said he himself accomplished prior to the delivery to Holtzman.

Also Michael Bloom said that Holtzman was in the insurance business at the time, instead of the awning and screen business.

Holtzman decided—so he says—that he had made a poor purchase, and therefore sought an interview with Michael Bloom at the latter's home on or about the 9th of May, and, according to the brief of Bloom's attorney, "insisted upon rescinding the sale."

It will be noted that a rescission would have to be accomplished between the buyer and seller.

Michael Bloom repaid $175.00 to Holtzman, having turned that sum in cash over to his father when the deal with Holtzman was made, and having received it back from his father; thereafter he went to Chicago and interviewed Mr. G. J. Lynn, a buyer for Marshall Field & Company, and sold 112 dozen pocket books or bags at $15.50 a dozen, from samples from the lot in question, and the order bears date of May 20, 1931.

There is no dispute that the bags so sold were the ones above referred to, and they were promptly shipped by Michael Bloom from No. 7402 Twenty-First avenue, Brooklyn, New York, and were received in Chicago on May 25, 1931.

As the trustee in bankruptcy had no witnesses to this transaction, it had to rely upon the testimony of the Blooms, Holtzman and Lynn.

The Irving Trust Company was appointed ancillary receiver in the Southern district, and, at a first meeting of creditors held on June 3rd, 1931, it was appointed trustee by the referee in bankruptcy.

An examination under 21-A, begun on May 26th, 1931, developed substantially the the foregoing facts; on June 5, 1931, an order to show cause was issued in the Southern district, directing Marshall Field & Company, Harris Bloom, Lena Bloom, his wife, and Michael Bloom to show cause why Marshall Field & Company should not be restrained from paying over the proceeds of the above sale to the parties named; on June 17, 1931, on the return of the order to show cause, the Court heard both sides, and the stay was granted.

On June 19, 1931, this turnover proceeding was initiated before the referee on a petition of the trustee, and the order to show cause issued in that behalf contained a stay.

The opposition to the original application for a stay heard in the Southern district was based upon affidavits of Harris, Michael, Samuel and Marcus Bloom and Herman Holtzman, which were verified on June 10, 1931, as to the first three, and on June 16th as to the last two. These affidavits were filed in the Southern district, and copies were served on the attorney for the trustee on May 12, 1932, as the opposing papers to the turnover petition above referred to.

In the meantime and pursuant to notice of motion before the referee dated December 3, 1931, an order was made by the latter on January 30, 1932, directing that a commission issue to a notary public in Chicago before whom the testimony of Mr. Lynn, of Marshall Field & Company, should be taken. That order recites the notice of motion and the petition of the trustee in support thereof "and the consent of Harry G. Fromberg, Esq., attorney for the bankrupt herein, having been given in open court and placed upon the record herein."

Thereafter the testimony was taken pursuant to the commission, and returned to the clerk of this court, and the deposition was filed April 21, 1932.

The hearing in the turnover proceeding went forward on May 6, 1932, and without objection the testimony taken at the adjourned first meeting of creditors was offered in behalf of the petitioner, and that in turn included a stipulation that the testimony taken on the 21–A examination be also included as part of the record. The matter was submitted to the referee upon all such testimony, and as above stated, the affidavits offered in opposition to the motion for the original stay were served on May 12, 1932, upon the attorney for the trustee as the papers in opposition to the turnover petition, and these latter affidavits are covered in the supplemental certificate to review made by the referee.

While the matter was pending decision and on May 28, 1932, a special notice of appearance and answer on behalf of the respondents Harris, Lena and Michael Bloom, in connection with the turnover proceeding, was filed by counsel apparently employed for that purpose, in which the jurisdiction of the referee to dispose of the matter in a summary way was challenged for the first time.

On October 11, 1932, the referee filed a decision granting the motion. The special appearance was disposed of by the referee as being clearly an afterthought, and upon the further ground that the claim of adverse title is without merit because the testimony shows that no colorable title exists in Harris and Michael Bloom.

So far as Lena Bloom is concerned, it is clear that she has no title or color of title. The same is true as to Harris Bloom as an individual.

■ The real question is whether Michael Bloom has any title based upon the transactions above recited and, if he has, whether he has submitted to the adjudication of that claim by the referee in the turnover proceeding.

Both sides rely upon Harrison v. Chamberlin, 271 U. S. 191, 46 S. Ct. 467, 468, 70 L. Ed. 897, in which, among other things, it is said:

"It is well settled that a court of bankruptcy is without jurisdiction to adjudicate in a summary proceeding a controversy in reference to property held adversely to the bankrupt estate, without the consent of the adverse claimant; but resort must be had by the trustee to a plenary suit." (Citing cases.)

The foregoing is a clear recognition that there may be such a thing as a consent by the adverse claimant to the adjudication in a summary proceeding.

Such a consent appears from this record. Michael Bloom appeared by an attorney, Mr. Harry G. Fromberg, throughout the pendency of the turnover proceedings before the referee, which began on June 19, 1931, and continued until October 11, 1932; through his attorney he consented to the taking of the testimony of Mr. Lynn in Chicago, and, through that attorney, he argued before the referee on May 6, 1932, that the evidence was insufficient to justify the granting of the order sought by the trustee; on May 12, 1932, he caused his attorney to serve on his behalf, in opposition to the turnover petition, a copy of the affidavit which he had sworn to on June 10, 1931, in the Southern district, and the issues thus made were submitted to the referee for his determination without objection of a jurisdictional nature on behalf of anyone.

Marshall Field & Company, a party to the turnover proceeding, has not sought to make any objection, even at this date, to the proceeding before the referee.

As there is no conflict in testimony to be resolved in favor of one side or against the other, and the determination really involves only a question of law, namely, whether, under the facts as shown, the property which is the debt owing by Marshall Field & Company is that of the bankrupt or of Michael Bloom, a situation is not presented in which the court is required to weigh testimony against testimony and to find certain testimony to be true and certain testimony not to be true. See In re Yorkville Coal Co. (C. C. A.) 211 F. 619, at page 622.

■ The jurisdiction in this summary proceeding rests in the finding by the referee, for that is what his decision means, that the debt of Marshall Field & Company is due and payable to the bankrupt, and was so at the time of adjudication.

A contrary ruling in this case would be unfair to the creditors because it is not thought that an adverse claimant should be heard to assert such a claim as is now advanced in his behalf after he has acquiesced and participated in a summary proceeding for a period of seventeen months in a case in which there is no contested question of fact.

The petition to review is denied. Settle order on notice.